# **EXHIBIT 1**

CCAA Reverse Vesting Order

Court File No. CV-24-00724693-00CL

***ONTARIO***

**SUPERIOR COURT OF JUSTICE**

**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE | ) | THURSDAY, THE THIRTY-FIRST |
| | ) | |
| JUSTICE PENNY | ) | DAY OF OCTOBER, 2024 |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF VBI VACCINES INC., VARIATION BIOTECHNOLOGIES INC., VBI VACCINES (DELAWARE) INC., VARIATION BIOTECHNOLOGIES (US), INC., SCIVAC LTD., SCIVAC HONG KONG LIMITED AND VBI VACCINES B.V.

Applicants

**APPROVAL AND REVERSE VESTING ORDER**

**THIS MOTION**, made by VBI Vaccines Inc. ("**Company**"), Variation Biotechnologies Inc. ("**VBI Cda**"), VBI Vaccines (Delaware) Inc. ("**VBI DE**" and, together with the Company and VBI Cda, the "**Retained Companies**"), Variation Biotechnologies (US), Inc., SciVac Ltd. ("**SciVac**"), SciVac Hong Kong Limited and VBI Vaccines B.V. (the "**Applicants**"), pursuant to the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA") for an order, *inter alia*: (a) approving the amended and restated acquisition agreement dated effective October 24, 2024  between the Retained Companies and SciVac**,** and K2 VBI Equity Trust LLC, as purchaser (the "**Purchaser**"), and K2 HealthVentures LLC ("**K2HV**"), as agent of the Purchaser in respect of the Loan Agreement and Dip Facility Agreement (as defined in the Acquisition Agreement) (the "**Acquisition Agreement**"), a copy of which was attached as Exhibit "A" to the Fifth Baxter Affidavit (as defined below) and the Transaction (as defined in the Acquisition Agreement); (b) adding 16445322 Canada Inc. ("**ResidualCo1**") and 16445331 Canada Inc. ("**ResidualCo2**", together with ResidualCo1, the "**ResidualCos**") as applicants to these proceedings (the "**CCAA Proceedings**"); (c) vesting of the Assumed Contracts (as defined in the Acquisition Agreement)

and the Purchased Assets (as defined in the Acquisition Agreement)  in VBI DE, or the VBI DE Nominee (as defined in the Acquisition Agreement)  in accordance with the Acquisition Agreement, free and clear of all Encumbrances (as defined in the Acquisition Agreement), other than Permitted Encumbrances (as defined in the Acquisition Agreement) except in the case of the VBI DE Nominee, (d) vesting out of the Retained Companies all Excluded Assets (as defined in the Acquisition Agreement), Excluded Contracts (as defined in the Acquisition Agreement) and Excluded Liabilities (as defined in the Acquisition Agreement), and discharging all Encumbrances to Be Discharged (as defined in the Acquisition Agreement), (e) terminating and cancelling all Equity Interests (as defined in the Acquisition Agreement)  of the Retained Companies (other than the Subscription Shares (as defined in the Acquisition Agreement) and the VBI DE Share (as defined in the Acquisition Agreement)) and Equity Documents (as defined below) for no consideration (other than the rights of the Purchaser under the Acquisition Agreement), (f) authorizing and directing Company and VBI Cda to issue the Subscription Shares to the Purchaser, and vesting such Subscription Shares in Purchaser, free and clear of all Encumbrances, other than Permitted Encumbrances, (g) authorizing and directing the Company to transfer the VBI DE Share to Purchaser, and vesting such VBI DE Share in Purchaser, free and clear of all Encumbrances other than Permitted Encumbrances, (h) authorizing and directing the Retained Companies to file any and all filings or documents with the applicable Governmental Authority (as defined in the Acquisition Agreement) that is deemed necessary or desirable to give effect to the Transaction without further approval by the shareholders or directors of any VBI Group entity, including, without limitation, any articles of amendment or reorganization, (i) approving the Administrative Expense Amount (as defined in the Acquisition Agreement) pursuant to the Acquisition Agreement; and (j) granting certain ancillary relief, was heard this day by judicial videoconference via Zoom;

**ON READING** the Motion Record of the Applicants dated October 24, 2024, the Affidavit of Jeffrey Baxter sworn October 24, 2024 (the "**Fifth Baxter Affidavit**") and the Exhibits thereto and the Fourth Report (the "**Fourth Report**") of Ernst & Young Inc. ("**EY**"), in its capacity as the Court-appointed monitor of the Applicants (in such capacity, the "**Monitor**"), and on being advised that the creditors and other parties who are likely to be affected by this Order herein were given notice; **ON HEARING** the submissions of counsel for the Applicants, counsel for the Monitor, counsel for the Purchaser as secured creditor and DIP Lender (as defined in the Initial Order), and such other counsel parties as listed on the Participant Information Form, with no one else

appearing although duly served as appears from the affidavit of service of Philip Yang, filed October 24, 2024;

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINITIONS**

2.      **THIS COURT ORDERS** that, unless otherwise indicated or defined herein, capitalized terms used in this Order shall have the meanings given to them in the Acquisition Agreement, the Initial Order of the Honourable Madam Justice Kimmel dated July 30, 2024 (the "**Initial Order**") or the Amended and Restated Initial Order of the Honourable Madam Justice Kimmel dated August 9, 2024 (the "**ARIO**"), as applicable.

**APPROVAL AND VESTING**

3.      **THIS COURT ORDERS** that the Acquisition Agreement and the Transaction are hereby approved and the execution of the Acquisition Agreement by the Retained Companies and SciVac is hereby authorized and approved, with such amendments as the Retained Companies, SciVac and the Purchaser may deem necessary or otherwise agree to, with the approval of the Monitor. The Retained Companies and SciVac are hereby authorized and directed to perform their obligations under the Acquisition Agreement and to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction, including (a) terminating and cancelling all Equity Interests of the Retained Companies (other than the Subscription Shares and the VBI DE Share) as well as any agreement, contract, plan, indenture, deed, certificate, subscription rights, conversion rights, pre-emptive rights, options (including stock option or share purchase or equivalent plans), or other documents or instruments governing and/or having been created or granted in connection with the share capital of the Retained Companies (other than the VBI DE Share of VBI DE) (the "**Equity Documents**") for no consideration (other than the rights of the Purchaser under the Acquisition Agreement), (b) conveyance of the Purchased Assets to VBI DE and/or the VBI DE Nominee, free and clear of all Encumbrances, other than Permitted Encumbrances except in the case of the VBI DE Nominee, (c) the issuance of the Subscription Shares to the Purchaser, free and clear of all Encumbrances,

other than Permitted Encumbrances, (d) conveyance of the VBI DE Share to Purchaser, free and clear of all Encumbrances other than Permitted Encumbrances, and (e) the filing of any and all filings or documents with the applicable Governmental Authority that is deemed necessary or desirable to give effect to the Transaction without further approval by the shareholders or directors of any VBI Group entity, including, without limitation, any articles of amendment or reorganization.

4.      **THIS COURT ORDERS** that notwithstanding any provision hereof, the closing of the Transaction shall be deemed to occur pursuant to the terms and in the manner, order and sequence set out in the Acquisition Agreement, including in accordance with the Closing Sequence, with such alterations, changes or amendments as may be agreed to pursuant to the terms of the Acquisition Agreement.

5.      **THIS COURT ORDERS** that this Order shall constitute the only authorization required by the Retained Companies and SciVac to proceed with the Transaction and that no shareholder, director or other approval shall be required in connection therewith.

6.      **THIS COURT ORDERS** that, on the Closing Date, the following shall occur and shall be deemed to have occurred commencing at the Closing Time, all in accordance with the terms of the Acquisition Agreement, including the Closing Sequence set out in the Acquisition Agreement (as such sequence may be modified in accordance with the terms of the Acquisition Agreement) and the steps contemplated thereunder:

(a)      the Purchaser shall make the payments set forth under Section 3.2(a)(ii), if applicable, and Section 3.2(c) of the Acquisition Agreement, by wire transfer of immediately available funds to the Account, such amounts to be held by the Monitor on behalf of the VBI Group;

(b)      the officers and directors of each ResidualCo then serving shall resign, and the persons identified by Purchaser at least two (2) Business Days prior to the Closing Date shall become the officers and directors of the ResidualCos, in accordance with the constating documents of each such ResidualCo;

(c)      (i) each of the Retained Companies shall be deemed to transfer to ResidualCo1 the Excluded Assets and the Excluded Contracts, and ResidualCo1 shall issue the Excluded Asset Promissory Note, and (ii) each of the Retained Companies shall

be deemed to transfer to ResidualCo2 the Excluded Liabilities and the Company shall issue the Excluded Liabilities Promissory Note;

(d)     each of the Company and VBI Cda (and, if requested by Purchaser, VBI DE) shall amend, pursuant to applicable corporate laws, its stated and issued capital to provide that all Equity Interests in the Retained Companies (other than the VBI DE Share) as well as any agreement, contract, plan, indenture, deed, certificate, subscription rights, conversion rights, pre-emptive rights, options (including stock option or share purchase or equivalent plans), or other documents or instruments governing and/or having been created or granted in connection with any Equity Interest of the Retained Companies (other than the VBI DE Share of VBI DE) shall be deemed terminated and cancelled for no consideration, and (ii) each of Company and VBI Cda shall create a new class of common shares, which such new class of common shares shall represent the Subscription Shares to be issued in the immediately following step;

(e)     each of the Company and VBI Cda shall issue the applicable Subscription Shares to the Purchaser for the New Company Share Subscription Price in the case of the New Company Shares and the New VBI Cda Share Subscription Price in the case of the New VBI Cda Shares;

(f)     the Company (as sole shareholder of VBI DE) shall transfer the VBI DE Share to the Purchaser for the VBI DE Share Purchase Price;

(g)     either:

   (i)     in the event the Purchaser has not designated a VBI DE Nominee in accordance with Section 2.3(b) of the Acquisition Agreement,

      (A)     Purchaser shall contribute, transfer and assign to VBI DE, as a capital contribution to VBI DE: (x) Purchaser's rights, title, interests, remedies, benefits, entitlements, and obligations and covenants in respect of $20,000,000 of the outstanding amount of obligations payable by the Retained Companies under the Loan Agreement; and (y) $10,000 by wire transfer of immediately payable funds;

(B)     immediately after such capital contribution by Purchaser in accordance with Section 11.2(1)(g)(i)(A) of the Acquisition Agreement:

(I)     VBI DE shall (x) release the applicable members of the VBI Group from repayment of the $20,000,000 Contribution Amount, and (y) pay the $10,000 Cash Payment by wire transfer of immediately available funds to the Account, such amount to be held by the Monitor on behalf of the VBI Group; and

(II)    in consideration for the release pursuant to Section 11.2(1)(g)(i)(B)(I) and the assumption of the Assumed Liabilities by VBI DE, SciVac shall be deemed to transfer to VBI DE, the Purchased Assets and the Assumed Contracts, and SciVac and VBI DE shall enter into the Assignment and Assumption Agreement; or

(ii)    in the event the Purchaser has designated a VBI DE Nominee in accordance with Section 2.3(b) of the Acquisition Agreement, to the extent VBI DE Nominee acquires certain or all of the Purchased Assets, the Assumed Contracts and the Assumed Liabilities, then (A) Company, VBI Cda and SciVac shall be deemed to transfer to VBI DE Nominee such Purchased Assets, Assumed Contracts and Assumed Liabilities, (B) Company, SciVac and VBI DE Nominee shall enter into an assignment and assumption agreement or such other definitive documentation as is necessary in the circumstances, (C) Company and SciVac shall enter into a general conveyance and/or bill of sale in respect of any of the Purchased Assets, and (D) VBI Cda and, if applicable, any affiliates of VBI Cda, will enter into an assignment and assumption agreement in respect of the assignment to VBI DE Nominee of the SciVac Intellectual Property that may be registered in the name of or owned by VBI Cda and any affiliates of VBI Cda; provided, however, to the extent the VBI DE Nominee does not acquire all of the Purchased Assets identified in Schedule "B" of the

Acquisition Agreement, such Purchased Assets that are not acquired by the VBI DE Nominee shall be transferred to VBI DE.

(h) the officers and directors of each of the Retained Companies then serving shall resign, and the persons identified by Purchaser at least two (2) Business Days prior to the Closing Date shall become the officers and directors of the Retained Companies, in accordance with the constating documents of each such Retained Company;

(i) using proceeds deposited in the Account in accordance with Section 3.2 of the Acquisition Agreement, the Monitor shall be directed to pay on behalf of the Company:

　　(i) all legal fees of the Company and the Monitor (including financial advisor and legal counsel fees) related to the CCAA Proceedings and the Transaction solely to the extent that such expenses are subject to the Administration Charge that ranks ahead of the DIP Lender's Charge, up to an amount of $600,000;

　　(ii) to each key employee referred to in the KERP, such amount to which such employee is entitled, up to $679,005 in the aggregate; and

(j) The Retained Assets and the Retained Liabilities will be retained by the Retained Companies, the Purchased Assets will be purchased, and the Assumed Liabilities will be assumed, by VBI DE and/or by the VBI DE Nominee (in whole or in part) and the VBI DE Share will be purchased by the Purchaser, in each case free and clear of and from any and all debts, liabilities, actions, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or liquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise, including any and all encumbrances, security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**"), other

than the Retained Liabilities and the Assumed Liabilities except in the case of the VBI DE Nominee, and including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Initial Order or the ARIO or any other Order of the Court; (ii) all charges, security interests or claims evidenced by registrations pursuant to the Personal Property Security Act (Ontario), Personal Property Security Act (British Columbia), the Uniform Commercial Code or any other personal property registry system of any province, state, country territory or other domestic or foreign jurisdiction; and (iii) those Claims listed on Schedule "B" hereto (all of which are collectively referred to as the "**Encumbrances**"), other than the Permitted Encumbrances except in the case of the VBI DE Nominee, and, for greater certainty, all of the Encumbrances, other than the Permitted Encumbrances except in the case of the VBI DE Nominee, affecting or relating to the Retained Assets and the Purchased Assets and the VBI DE Share are hereby expunged and discharged as against the Retained Assets, the Purchased Assets and the VBI DE Share, as applicable, provided that Retained Contracts will be retained by the applicable Retained Company subject only to those Claims of the counterparty to the applicable contract as agreed between the Purchaser, the Retained Companies, SciVac and the counterparty to the applicable contract. For greater certainty, any of the Purchased Assets acquired by the VBI DE Nominee shall be acquired by the VBI DE Nominee free and clear of all Claims and Encumbrances, including Permitted Encumbrances, and all Encumbrances, including Permitted Encumbrances, shall be expunged and discharged as against such Purchased Assets.

7.      **THIS COURT ORDERS** that the Monitor may rely on written notice from the Retained Companies, SciVac and the Purchaser regarding the satisfaction or waiver of conditions to closing under the Acquisition Agreement and shall have no liability with respect to delivery of the Monitor's Certificate, a form of which is attached hereto as Schedule "A".

8.      **THIS COURT ORDERS** that the Monitor shall file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof in connection with the Transaction.

9.      **THIS COURT ORDERS** that upon delivery of a copy of the Monitor's Certificate and a copy of this Order, together with any applicable registration fees, all governmental authorities and any other applicable registrar or government ministries or authorities exercising jurisdiction with

respect to the Retained Companies, SciVac, the Business, the Retained Assets, the Retained Liabilities, the Assumed Liabilities, the Purchased Assets, or the Excluded Assets (collectively, the "**Governmental Authorities**") are hereby authorized, requested and directed to accept delivery of a copy of the Monitor's Certificate and a copy of this Order as though they were originals and to register such transfers and interest authorizations as may be required to give effect to the terms of this Order and the Acquisition Agreement. Presentment of this Order and the Monitor's Certificate shall be the sole and sufficient authority for the Governmental Authorities to make and register transfers of interest against any of the Retained Assets (including the Retained Contracts), Purchased Assets (including the Assumed Contracts) or Excluded Assets and the Monitor, the Retained Companies, SciVac, the Purchaser and, if applicable, the VBI DE Nominee are hereby specifically authorized to discharge or amend the registrations on the Subscription Shares, VBI DE Share, the Retained Assets, the Purchased Assets, and the Excluded Assets, as applicable.

10.    **THIS COURT ORDERS** that each of the Company and VBI Cda is hereby permitted to execute and file articles of amendment in accordance with the *Business Corporations· Act* (British Columbia) and the *Canada Business Corporations· Act* (Canada), respectively, or such further and other documents or instruments as may be required to permit or enable and effect the Closing Sequence, including, without limitation, the cancellation of the Existing Equity, issuance of the Subscription Shares, the appointment and/or resignation of directors of the Retained Companies, and such articles, documents or other instruments shall be deemed to be duly authorized; valid, and· effective notwithstanding any requirement under federal or provincial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required under corporate law to effect the Closing Procedure.

11.    **THIS COURT ORDERS** that each of the Director, as defined in the *Canada Business Corporations Act*, and the Director, as defined in  the *Business Corporations Act* (British Columbia), shall accept and receive the articles of amendment or such further and other documents or instruments as may be required to permit or enable and effect the Closing Sequence, filed by either the Monitor, the Retained Companies or the ResidualCos, as the case may be.

12.    **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Applicants or the Monitor, as the case may be, are authorized, permitted and directed to, at the Closing Time, disclose to the Purchaser,

all human resources and payroll information in the Applicants' records pertaining to past and current employees of the Applicants. The Purchaser shall maintain and cause the Retained Companies, after Closing, to maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Applicants prior to Closing.

13.     **THIS COURT ORDERS** that, at the Closing Time and without limiting the provisions of paragraph 6 or paragraph 35 hereof, the Retained Companies and the Purchaser shall be released from any and all claims, liabilities (direct, indirect, absolute or contingent) or obligations with respect to any Taxes (including penalties and interest thereon) of, or that relate to, the Retained Companies, including without limiting the generality of the foregoing all taxes that could be assessed against the Retained Companies or the Purchaser, as applicable, (including its affiliates and any predecessor corporations) pursuant to section 160 of the *Income Tax Act* (Canada), or any provincial equivalent, in connection with the Applicant (provided that, as it relates to the Retained Companies, such release shall not apply to (a) the period from July 30, 2024 until Closing; (b) Tax liabilities (including transfer Taxes), if any, arising in connection with or as a result of the transfer of the Excluded Assets to ResidualCo1 and the assumption of the Excluded Liabilities by ResidualCo2, or (c) Taxes in respect of the business and operations conducted by the Retained Companies after the Closing Time).

14.     **THIS COURT ORDERS** that except to the extent expressly contemplated by the Acquisition Agreement, all Retained Contracts and Assumed Contracts to which any of the Retained Companies, SciVac, the Purchaser, or the VBI DE Nominee, as applicable, is a party upon delivery of the Monitor's Certificate will be and remain in full force and effect upon and following delivery of the Monitor's Certificate and no individual, firm, corporation, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

(a)     any event that occurred on or prior to the delivery of the Monitor's Certificate and is not continuing that would have entitled such Person to enforce those rights or

remedies (including defaults or events of default arising as a result of the insolvency of the Applicants);

(b) the insolvency of the Applicants or the fact that the Applicants sought or obtained relief under the CCAA;

(c) any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations or other steps taken or effected pursuant to the Acquisition Agreement, the Transaction or the provisions of this Order, or any other Order of the Court in these proceedings; or

(d) any change of control of the Retained Companies, or any of them, arising from the implementation of the Acquisition Agreement, the Transaction or the provisions of this Order.

15. **THIS COURT ORDERS**, for greater certainty, that: (a) nothing in paragraph 14 hereof shall waive, compromise or discharge any obligations of the Retained Companies, SciVac, the Purchaser or the VBI DE Nominee in respect of any Assumed Liabilities or Retained Liabilities, and (b) the designation of any Claim as an Assumed Liability or Retained Liability is without prejudice to the Applicants' right to dispute the existence, validity or quantum of any such Assumed Liability or Retained Liability, and (c) nothing in this Order or the Acquisition Agreement shall affect or waive the Applicants' rights and defences, both legal and equitable, with respect to any Assumed Liability or Retained Liability, including, but not limited to, all rights with respect to entitlements to set-offs, counterclaims, deductions or recoupments against such Assumed Liability or Retained Liability.

16. **THIS COURT ORDERS** that from and after the Closing Time, all Persons shall be deemed to have waived any and all defaults of each of the Retained Companies and SciVac then existing or previously committed by each of the Retained Companies or SciVac, or caused by each of the Retained Companies or SciVac, directly or indirectly, or non-compliance with any covenant, warranty, representation, undertaking, positive or negative pledge, term, provision, condition or obligation, expressed or implied, in any Retained Contract or Assumed Contract, existing between such Person and the applicable Retained Company or SciVac arising directly or indirectly from the filing by the applicable Retained Company or SciVac under the CCAA and the implementation of the Transaction, including without limitation any of the matters or events listed in paragraph 14 hereof, and any and all notices of default and demands for payment or any step or proceeding

taken or commenced in connection therewith under a Retained Contract or an Assumed Contract shall be deemed to have been rescinded and of no further force or effect, provided that nothing herein shall be deemed to excuse any of the Retained Companies, SciVac or the Purchaser, as applicable, from performing their respective obligations under the Acquisition Agreement or be a waiver of defaults by the Retained Companies and SciVac under the Acquisition Agreement and the related documents.

17.    **THIS COURT ORDERS** that from and after the Closing Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, derivatively or otherwise, and including without limitation, administrative hearings and orders, declarations and assessment, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Retained Companies, the Retained Assets or the Purchased Assets relating in any way to or in respect of any Excluded Assets, Excluded Contracts, Excluded Liabilities and any other claims, obligations and other matters which are waived, released, expunged or discharged pursuant to this Order.

18.    **THIS COURT ORDERS** that, from and after the Closing Time:

(a)    the nature of the Retained Liabilities retained by the Retained Companies and the Assumed Liabilities assumed by the Purchaser, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Transaction or this Order;

(b)    the nature of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to ResidualCo2;

(c)    any Person that prior to the completion of all steps in the Closing Sequence had a valid right or claim against any Retained Company under or in respect of any Excluded Contract or Excluded Liability (each an "**Excluded Liability Claim**") shall no longer have such right or claim against the applicable Retained Company but will have an equivalent Excluded Liability Claim against ResidualCo1, in respect of the Excluded Contract, or against ResidualCo2 in respect of the Excluded Liability, from and after the completion of all steps in the Closing Sequence in its place and stead, and nothing in this Order limits, lessens or extinguishes the

Excluded Liability Claim of any Person as against ResidualCo1 or ResidualCo2, as applicable; and

(d)     the Excluded Liability Claim of any Person against ResidualCo1 or ResidualCo2 (as applicable) following the completion of all steps in the Closing Sequence shall have the same rights, priority and entitlement as such Excluded Liability Claim had against the applicable Applicant immediately prior to the completion of all steps in the Closing Sequence.

19.     **THIS COURT ORDERS** that:

(a)     upon completion of all steps in the Closing Sequence, the Retained Companies shall cease to be applicants in these CCAA Proceedings and the Retained Companies shall be deemed to be released from the purview of the Initial Order, the ARIO and all other Orders of this Court granted these CCAA Proceedings, save and except for this Order the provisions of which (as they relate to the Retained Companies) shall continue to apply in all respects;

(b)     as of the date of this Order, each ResidualCo shall each be a company to which the CCAA applies, and each ResidualCo shall be added as an applicant in these CCAA Proceedings and all references in any Order of this Court in respect of these CCAA Proceedings to (i) an "*Applicant*" shall refer to and include each ResidualCo, *mutatis mutandis*, (ii) "*Property*", as defined in the Initial Order, shall include the current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof, of each ResidualCo (collectively, the "**ResidualCo Property**"), and, for greater certainty, each of the Charges (as defined in the Initial Order) shall constitute a charge on the ResidualCo Property.

20.     **THIS COURT ORDERS** that for greater certainty, nothing in this Order, including the release of the Retained Companies from the purview of these CCAA Proceedings pursuant to paragraph 19(a) hereof and the addition of the ResidualCos as applicants in these CCAA Proceedings shall affect, vary, derogate from, limit or amend, and EY shall continue to have the benefit of, any and all rights and approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the Initial Order, the ARIO, this Order, any other Orders in these CCAA

Proceedings or otherwise, including all approvals, protections and stays of proceedings in favour of EY in its capacity as Monitor, all of which are expressly continued and confirmed.

21.     **THIS COURT ORDERS** that, notwithstanding:

    (a)    the pendency of these CCAA Proceedings;

    (b)    any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") in respect of any of the Applicants or either of the ResidualCos and any bankruptcy order issued pursuant to any such applications; and

    (c)    any assignment in bankruptcy made in respect of any of the Applicants or either of the ResidualCos;

the Acquisition Agreement, the implementation of the Transaction (including without limitation the transfer and vesting of the Excluded Assets (including the Excluded Contracts) in and to ResidualCo1 and the Excluded Liabilities in and to Residual Co2, the issuance of the Subscription Shares to the Purchaser and the transfer and vesting of the Purchased Assets in and to VBI DE and/or, if applicable, the VBI DE Nominee (in whole or in part), and the VBI DE Share in and to the Purchaser and the terms of this Order, shall be binding on any trustee in bankruptcy that may be appointed in respect of any of the Applicants and/or either of the ResidualCos, and shall not be void or voidable by creditors of the Applicants or ResidualCos, as applicable, nor shall they constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the CCAA, the BIA or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**ASSIGNMENT OF CONTRACTS**

22.     **THIS COURT DECLARES** that the Purchaser shall be entitled to notify the Monitor from time to time in writing within 20 days of the issuance of the Monitor's Certificate, that it seeks the post-closing assignment or retention of the rights, benefits, obligations and interests of any of the Retained Companies or SciVac under one or more Retained Contract or Assumed Contract (the "**Proposed Post-Closing Assignment**" and each such contract a "**Proposed Post-Closing Assigned Contract**").

23.     **THIS COURT ORDERS** the Monitor, within five days of the receipt from the Purchaser of a notice of a Proposed Post-Closing Assignment, to review such assignment, and:

(a)     if the Monitor approves the Proposed Post-Closing Assignment, send one or more notices of the Proposed Post-Closing Assignment to the counterparties to the Proposed Post-Closing Assigned Contracts substantially in the form of the draft notice of assignment attached as Schedule "C" hereto (the "**Notice of Assignment**"); or

(b)     if the Monitor does not approve the Proposed Post-Closing Assignment, inform the Purchaser in writing of its decision (the "**Monitor's Notice**").

24.     **THIS COURT ORDERS** that if, within 10 days of the receipt of the Notice of Assignment, a counterparty to a Proposed Post-Closing Assigned Agreement has not notified and filed with the Court a notice of opposition to the Proposed Post-Closing Assignment, the Monitor shall issue and file with the Court forthwith a certificate substantially in the form appended as Schedule "D" hereto (a "**Post-Closing Assignment Certificate**").

25.     **THIS COURT ORDERS and DECLARES** that upon the issuance of a Post-Closing Assignment Certificate by the Monitor, the rights, benefits, obligations and interests of the Retained Companies and SciVac, as applicable, under the contracts mentioned in such Post-Closing Assignment Certificate (the "**Assigned Contracts**") shall be assigned to (or retained by) one of the Retained Companies, VBI DE Nominee or the Purchaser, as instructed by the Purchaser, without any further consents or approvals of this Court, provided that all monetary defaults of the Retained Companies and SciVac, if any and as applicable, other than those arising by reason only of their insolvency, the commencement of these proceedings under the CCAA or the failure to perform non-monetary obligations, are remedied within 10 days of the issuance and filing of the applicable Post-Closing Assignment Certificate, all in accordance with the Acquisition Agreement.

26.     **THIS COURT DECLARES** that subject to the Retained Companies', Purchaser's or VBI DE's, as applicable, obligations relating to the monetary defaults set forth in paragraph 25, the counterparties to any Assigned Contracts have no right to claim or effect set-off or compensation between:

(a) on the one hand, the amounts that are owing or which may become owing by such counterparties to any of the Retained Companies or SciVac, as applicable, in connection with goods supplied or to be supplied under the Assigned Contracts by the Retained Companies or SciVac, as applicable, as and from the date of this Order; and

(b) on the other hand, any amounts owed, or allegedly owed, by the Retained Companies or SciVac, as applicable, to such counterparties prior to the date of this Order, whether related or not to the Assigned Contracts.

27. **THIS COURT ORDERS** that any anti-assignment or consent-to-assignment provisions in any Assigned Contracts shall not restrict, limit, impair, prohibit or otherwise affect the assignment of the Assigned Contracts, as ordered hereunder.

28. **THIS COURT ORDERS** that the Assigned Contracts shall be valid and binding and in full force and effect and enforceable by the Retained Companies, VBI DE Nominee or the Purchaser, as applicable, in accordance with their terms.

29. **THIS COURT ORDERS and DIRECTS** the Monitor to notify a copy of this Order to each of the counterparties to the Assigned Contracts, by email or by regular mail.

30. **THIS COURT AUTHORIZES** the Retained Companies, VBI DE Nominee and the Purchaser to perform all acts, sign all documents and take any other action that could be required or useful to give full effect to the assignment of the Assigned Contracts to any of the Retained Companies, VBI DE Nominee or the Purchaser in accordance with this Order.

31. **THIS COURT ORDERS and DIRECTS** the Monitor to file with the Court a copy of the Post-Closing Assignment Certificate, forthwith after issuance thereof.

**ADMINISTRATIVE EXPENSE AMOUNT**

32. **THIS COURT ORDERS** that on the Closing Date and in accordance with the Acquisition Agreement, the Company shall pay to the Monitor an amount equal to the Administrative Expense Costs and CCAA Charge Amount as determined pursuant to the Acquisition Agreement, which the Monitor shall be authorized and directed to hold in a segregated interest-bearing account for the benefit of those entitled to be paid under the Administrative Expense Amount and in accordance with the Acquisition Agreement and this Order.

33.     **THIS COURT ORDERS** that the Monitor is authorized and directed to pay from the Administrative Expense Amount, in the name of and on behalf of the Applicants prior to the Closing and on behalf of the ResidualCos following the Closing:

   (a)     the reasonable and documented fees and costs of (i) legal counsel to the Applicants incurred up to the Closing; and (ii) the Monitor and its legal counsel and the professional advisors of the ResidualCos, in each case for services performed prior to and after the Closing Date, in each case, relating directly or indirectly to the CCAA Proceedings or the Acquisition Agreement, including without limitation, costs required to wind down and/or dissolve and/or bankrupt the ResidualCos and costs and expenses required to administer the Excluded Assets, Excluded Contracts, Excluded Liabilities and the ResidualCos; and

   (b)     other amounts owing in respect of obligations secured by the CCAA Charges that rank ahead of the DIP Lender's Charge and are not paid or assumed on Closing.

34.     **THIS COURT ORDERS** that any amounts remaining in the Monitor's accounts after payment of all Administrative Expense Costs and the CCAA Charges in accordance with the Acquisition Agreement and this Order shall be paid by the Monitor to the Company.

**RELEASES**

35.     **THIS COURT ORDERS** that effective upon the delivery of the Monitor's Certificate to the Applicants and the Purchaser, (a) the Applicants and ResidualCos and their respective present and former directors, officers, employees, legal counsel and advisors, (b) the Monitor and its legal counsel, and their respective present and former directors, officers, partners, employees and advisors and (c) the Purchaser, K2HV and their respective affiliates and their respective, present and former directors, officers, partners, shareholders, employees, legal counsel and advisors, (the Persons listed in (a), (b) and (c) being collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole

or in part on any act or omission, transaction, offer, investment proposal, dealing, or other fact, matter, occurrence or thing existing or taking place prior to the delivery of the Monitor's Certificate, or undertaken or completed in connection with or pursuant to the terms of this Order or these CCAA Proceedings, or arising in connection with or relating to the Acquisition Agreement, the closing documents, the Applicants' assets, business or affairs, prior dealings with the Applicants, or any agreement, document, instrument, matter or transaction involving the Applicants arising in connection with or pursuant to any of the foregoing, and/or the consummation of the Transaction, other than the Permitted Encumbrances and Retained Liabilities (collectively, the "**Released Claims**"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties; provided that nothing in this paragraph shall waive, discharge, release, cancel or bar (i) any claim for fraud or wilful misconduct, (ii) any claim against ResidualCo2 in respect of the Excluded Liabilities transferred pursuant to the Closing, (iii) any claim against the Purchaser in respect of the Assumed Liabilities or (iv) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA.

**THE MONITOR**

36.     **THIS COURT ORDERS** that the Monitor, its employees and representatives shall not be deemed directors of the ResidualCos, de facto or otherwise, and shall incur no liability as a result of acting in accordance with this Order, other than any liability arising out of or in connection with the gross negligence or wilful misconduct of the Monitor.

37.     **THIS COURT ORDERS** that no action lies against the Monitor by reason of this Order or the performance of any act authorized by this Order, except by leave of the Court following a motion brought on not less than fifteen (15) days' notice to the Monitor and its legal counsel. The entities related or affiliated with the Monitor or belonging to the same group as the Monitor (including, without limitation, any agents, employees, legal counsel or other advisors retained or employed by the Monitor) shall benefit from the protection granted to the Monitor under the present paragraph.

38.     **THIS COURT ORDERS** that the Monitor shall not, as a result of this Order or any matter contemplated hereby: (a) be deemed to have taken part in the management or supervision of the management of the Applicants or ResidualCos, or to have taken or maintained possession or control of the business or property of any of the Applicants or ResidualCos, or any part thereof;

or (b) be deemed to be in Possession (as defined in the Initial Order) of any property of the Applicants or ResidualCos within the meaning of any applicable Environmental Legislation (as defined in the Initial Order) or otherwise.

39.    **THIS COURT ORDERS** that, within ten (10) days of the Closing Date, the Monitor shall release an amount of up to the amount of the KERP Charge to the Company and the Company is authorized and directed to pay such amount, net of applicable withholdings and remittances payable, to the Key Employees (as defined by the ARIO) which are entitled to receive such amounts under the KERP (as defined by the ARIO).

40.    **THIS COURT ORDERS** that nothing in this Order shall affect, vary, derogate from, limit or amend any rights, approvals and protections afforded to the Monitor in these CCAA Proceedings and EY shall continue to have the benefit of any and all rights and approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the Initial Order, and any other Orders in these CCAA Proceedings or otherwise, including all approvals, protections and stays of proceedings in favour of EY in its capacity as Monitor, all of which are expressly continued and confirmed.

**SEALING PROVISION**

41.    **THIS COURT ORDERS** that Confidential Appendix "C" to the Fourth Report is hereby sealed pending further order of the Court and shall not form part of the public record.

**GENERAL**

42.    **THIS COURT ORDERS** that, following the Closing Time, the Purchaser, the Applicants and, if applicable, the VBI DE Nominee, shall be authorized to take all steps as may be necessary to effect the discharge of the Claims and Encumbrances as against the Applicants, the Retained Assets and the Purchased Assets, as applicable.

43.    **THIS COURT ORDERS** that, following the Closing Time, the title of these proceedings is hereby changed to:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,

R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF

VARIATION BIOTECHNOLOGIES (US), INC., SCIVAC LTD., SCIVAC HONG KONG LIMITED,
VBI VACCINES B.V., 16445322 CANADA INC. and 16445331 CANADA INC.

44.     **THIS COURT ORDERS** that, notwithstanding Rule 59.05, this Order is effective from the date that it is made and is enforceable without any need for entry and filing. In accordance with Rules 77.07(6) and 1.04, no formal order need to be entered and filed unless an appeal or a motion for leave to appeal is brought to an appellate court.

45.     **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada.

46.     **THIS COURT ORDERS** that each of the Applicants, the Foreign Representatives and the Monitor shall be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Foreign Representatives are authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including, with respect to VBI DE, in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and with respect to EY, in Israel under the relevant provisions of The Israeli Insolvency and Economic Rehabilitation Law, 2018

47.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor, the Foreign Representatives and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants, the Foreign Representatives and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants, the Foreign Representatives and the Monitor and their respective agents in carrying out the terms of this Order.

48.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Prevailing Eastern Time on the date hereof, provided that the transaction steps set out in paragraph 6 hereof shall be deemed to have occurred sequentially, one after the other, in the order set out in paragraph 6 hereof.

**SCHEDULE "A" – FORM OF MONITOR'S CERTIFICATE**

Court File No.  CV-24-00724693-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR**
**ARRANGEMENT OF VBI VACCINES INC., VARIATION BIOTECHNOLOGIES INC., VBI**
**VACCINES (DELAWARE) INC., VARIATION BIOTECHNOLOGIES (US), INC., SCIVAC LTD.,**
**SCIVAC HONG KONG LIMITED AND VBI VACCINES B.V.**

**MONITOR'S CERTIFICATE**

**RECITALS**

A.      Pursuant to an Initial Order of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") dated July 30, 2024 (the "**Initial Order**") and an Amended and Restated Initial Order of the Court dated August 9, 2024 (the "**ARIO**"), VBI Vaccines Inc. (the "**Company**"), Variation Biotechnologies Inc. ("**VBI Cda**"), VBI Vaccines (Delaware) Inc. ("**VBI DE**" and, together with the Company and VBI Cda, the "**Retained Companies**"), Variation Biotechnologies (US), Inc., SciVac Ltd. ("**SciVac**"), SciVac Hong Kong Limited and VBI Vaccines B.V. (collectively, the "**Applicants**") were granted creditor-protection pursuant to the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and Ernst & Young Inc. was appointed as court-appointed monitor of the Applicants.

B.      Pursuant to an Order of the Court dated October 31, 2024 (the "**Approval and Reverse Vesting Order**"), the Court, *inter alia*, (a) approved the Acquisition Agreement and the Transaction, (b) vested the Assumed Contracts and the Purchased Assets in VBI DE and/or, if applicable, the VBI DE Nominee (in whole or in part), free and clear of all Encumbrances, other than Permitted Encumbrances except in the case of the VBI DE Nominee, (c) vested out of the Retained Companies all Excluded Assets, Excluded Contracts and Excluded Liabilities, and discharged all Encumbrances to Be Discharged, (d) terminated and canceled all Equity Interests of the Retained Companies (other than the Subscription Shares and the VBI DE Share) and Equity Documents for no consideration (other than the rights of the Purchaser under the Acquisition Agreement), (e) authorized and directed the Company and VBI Cda to issue the Subscription

Shares to the Purchaser, free and clear of all Encumbrances, other than Permitted Encumbrances, and (f) authorized and directed the Company to transfer the VBI DE Share to Purchaser, free and clear of all Encumbrances, other than Permitted Encumbrances.

**C.      [On [DATE], 2024, the Purchaser and [NAME] (the "VBI DE Nominee") entered into an agreement for the acquisition by VBI DE Nominee of certain Purchased Assets, which agreement was acknowledged by the Company, SciVac, VBI DE and VBI Cda, which acquisition is conditional on, among other things, the Closing of the Transaction contemplated by the Acquisition Agreement.]**

**D.      [On [DATE], 2024, the Purchaser notified the Company, SciVac and the Monitor, in accordance with section 2.3(b) of the Acquisition Agreement, that it designated the VBI DE Nominee to acquire certain Purchased Assets.][1]**

E.      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Approval and Reverse Vesting Order.

**THE MONITOR CERTIFIES** that:

1.      The Monitor has received written confirmation from each of the Purchaser, the Retained Companies and SciVac, in form and substance satisfactory to the Monitor, that all conditions to closing under the Acquisition Agreement have been satisfied or waived;

2.      The Closing of the transaction under the Acquisition Agreement is deemed to have occurred at _____ **[TIME]** on **[DATE]**.

3.      **[The closing of the transfer of the Purchased Assets to the VBI DE Nominee in accordance with the Acquisition Agreement is deemed to have occurred at _____ [TIME] on [DATE]**.

4.      This Certificate was delivered by the Monitor at _____ **[TIME]** on _____ **[DATE]**.

---

[1] All paragraphs in square brackets shall be included in the event that the Purchaser makes the designation contemplated by section 2.3(b) of the Acquisition Agreement.

**Ernst & Young Inc., in its capacity as Monitor of the Applicants, and not in its personal capacity**

Per: _____

       Name:  »

       Title:  »

**SCHEDULE "B" – ENCUMBRANCES TO BE DISCHARGED**

Excluding the Permitted Encumbrances, all personal property securities registrations against the VBI Group under the Personal Property Securities Act (British Columbia), the Personal Property Securities Act (Ontario), the Uniform Commercial Code or any other personal property registry system of any province, state, country territory or other domestic or foreign jurisdiction, including but not limited to the following registrations:

**British Columbia**

| Debtor | Secured Party | Description of Collateral | Address |
|---|---|---|---|
| VBI VACCINES INC. | BRII BIOSCIENCES LIMITED | THE FOLLOWING PERSONAL PROPERTY, WHETHER NOW OR HEREAFTER EXISTING, WHETHER TANGIBLE OR INTANGIBLE, WHETHER NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER THE SAME MAY BE LOCATED: (I) ALL INTELLECTUAL PROPERTY TO THE EXTENT RELATED TO THE LICENSED PRODUCT; (II) INTELLECTUAL PROPERTY RIGHTS WITH RESPECT TO PREHEVBRI AND VBI-2601; (III) VBI'S RIGHTS TO THE FERRING LICENSE RELATING TO THE CHO CELL LINE; (IV) VBI'S RIGHTS TO THE SCIGEN LICENSE RELATING TO THE CHO CELL LINE; AND (V) ALL PROCEEDS OF THE FOREGOING<br><br>(SUCH AS, BY WAY OF EXAMPLE AND NOT BY LIMITATION, LICENSE ROYALTIES AND PROCEEDS OF INFRINGEMENT SUITS). | ONE CITY CENTER, SUITE 5-110, 110 CORCORAN STREET DURHAM NC<br><br>27701 United States of America |

**Ontario**

| Debtor | Secured Party | Description of Collateral | Address |
|---|---|---|---|
| VBI VACCINES INC. | BANK OF MONTREAL/BANQUE DE MONTREAL | ENERAL COLLATERAL DESCRIPTION<br><br>LF269 PLEDGE OF INSTRUMENT AND ASSIGNMENT OF PROCEEDS.COLLATERAL DESCRIBED VARIABLE RATE GUARANTEED INVESTMENT CERTIFICATE | 250 Yonge St # 12th Floor. Toronto, ON M5B 2L7 |

**[ADDITIONAL ENCUMBRANCES TO BE DISCHARGED IN RESPECT OF PURCHASED ASSETS TRANSFERRED TO VBI DE NOMINEE]**

**British Columbia**

| Debtor | Secured Party | Description of Collateral | Address |
|---|---|---|---|
| VBI VACCINES INC. | K2 HEALTHVENTURES LLC, AS COLLATERAL AGENT | ALL OF THE DEBTOR'S PRESENT AND AFTER ACQUIRED PERSONAL PROPERTY. | 855 BOYLSTON ST., 10TH FLOOR BOSTON MA 02116 United States of America |
| VBI VACCINES INC. | ANKURA TRUST COMPANY, LLC, AS COLLATERAL TRUSTEE | ALL OF THE DEBTOR'S EQUITY INTERESTS IN WHICH THE DEBTOR HAS ANY INTEREST, INCLUDING THE SHARES, TOGETHER WITH ALL PROCEEDS AND SUBSTITUTIONS THEREOF, ALL CASH, STOCK AND OTHER MONEYS AND PROPERTY PAID THEREON, ALL RIGHTS TO SUBSCRIBE FOR SECURITIES DECLARED OR GRANTED IN CONNECTION THEREWITH, AND ALL OTHER CASH AND NONCASH ,PROCEEDS OF THE FOREGOING. | 140 SHERMAN ST., FOURTH FLOOR FAIRFIELD CT 06824 United States of America |

**Ontario**

| Debtor | Secured Party | Description of Collateral | Address |
|---|---|---|---|
| VARIATION BIOTECHNOLOGIES INC. | K2 HEALTHVENTURES LLC, AS COLLATERAL AGENT | GOODS, INVTRY, EQUIP | 855 BOYLSTON ST., 10TH FLOOR BOSTON MA 02116 United States of America |

**SCHEDULE "C" – FORM OF NOTICE OF ASSIGNMENT**

Date: [●]

To: [●] ("you")

Re: Ontario Superior Court of Justice (Commercial List), Court File No.  CV-24-00724693-00CL (VBI Vaccines Inc. et al)

We act as the Monitor to VBI Vaccines Inc. ("**Company**"), Variation Biotechnologies Inc. ("**VBI Cda**"), VBI Vaccines (Delaware) Inc. ("**VBI DE**" and, together with the Company and VBI Cda, the "**Retained Companies**"), Variation Biotechnologies (US), Inc., SciVac Ltd. ("**SciVac**"), SciVac Hong Kong Limited and VBI Vaccines B.V. (collectively, the "**Applicants**") in the context of the Applicants' restructuring proceedings under the *Companies' Creditors Arrangement Act* (the "***CCAA***").

We refer to the attached Approval and Reverse Vesting Order dated October 31, 2024 rendered by the Ontario Superior Court of Justice (Commercial List) in Court File No.  CV-24-00724693-00CL (the "**Order**"), and the following contract(s) (the "**Contract**") to which you and one or more Applicants are parties: [●]

We have been notified by K2 VBI Equity Trust LLC (the "**Purchaser**") that they seek the post-closing assignment or retention, as applicable, of the rights benefits, obligations and interests of **[the Company / VBI Cda / VBI DE / SciVac]** under the Contract, and we have approved such assignment as Monitor of the Applicants (the "**Proposed Post-Closing Assignment**").

If you oppose the Proposed Post-Closing Assignment, you must inform the Monitor in writing of your grounds for opposition at the latest 10 days after the date this notice, failing which the rights, benefits, obligations and interests of **[the Company / VBI Cda / VBI DE / SciVac]** under the Contract shall be automatically and irrevocably assigned to, or retained by, the **[Purchaser / the Company / VBI Cda / VBI DE / SciVac / a nominee of VBI DE]** without any further consents or approvals.

If you agree with the Proposed Post-Closing Assignment you have nothing to do. The rights, benefits, obligations and interests of **[the Company / VBI Cda / VBI DE / SciVac]** under the

Contract will be automatically and irrevocably assigned to **[Purchaser / the Company / VBI Cda / VBI DE / SciVac / a nominee of VBI DE]** 10 days after the receipt of this notice.

More information can be obtained on the CCAA proceedings of the Applicants at [●]

Dated [●]

Ernst & Young Inc., in its capacity as Monitor and not in its personal or corporate capacity.

**SCHEDULE "D" – FORM OF POST-CLOSING ASSIGNMENT CERTIFICATE**

Court File No.  CV-24-00724693-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR**
**ARRANGEMENT OF VBI VACCINES INC., VARIATION BIOTECHNOLOGIES INC., VBI**
**VACCINES (DELAWARE) INC., VARIATION BIOTECHNOLOGIES (US), INC., SCIVAC LTD.,**
**SCIVAC HONG KONG LIMITED AND VBI VACCINES B.V.**

**POST-CLOSING ASSIGNMENT CERTIFICATE**

**RECITALS**

A.     Pursuant to an Initial Order of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") dated July 30, 2024 (the "**Initial Order**") and an Amended and Restated Initial Order of the Court dated August 9, 2024 (the "**ARIO**"), as amended, VBI Vaccines Inc., Variation Biotechnologies Inc., VBI Vaccines (Delaware) Inc., Variation Biotechnologies (US), Inc., SciVac Ltd., SciVac Hong Kong Limited and VBI Vaccines B.V. (collectively, the "**Applicants**") were granted creditor-protection pursuant to the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and Ernst & Young Inc. was appointed as court-appointed monitor of the Applicants.

B.     Pursuant to an Order of the Court dated October 31, 2024 (the "**Approval and Reverse Vesting Order**"), the Court, *inter alia*, (a) approved the Acquisition Agreement and the Transaction, and (b) vested the Assumed Contracts and the Purchased Assets in VBI DE and/or, if applicable, the VBI DE Nominee (in whole or in part).

C.     The Approval and Vesting Order orders the issuance and filing by the Monitor of this Post-Closing Assignment Certificate.

D.     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Approval and Reverse Vesting Order.

**THE MONITOR CERTIFIES** that:

1.      The Monitor received notice in writing from the Purchaser within 20 days of the closing of the Transaction that it seeks the post-closing assignment (including retention) of the rights, benefits, obligations and interests of **[the Company / VBI Cda / VBI DE / SciVac]** under the following contracts to which **[the Company / VBI Cda / VBI DE / SciVac]** are party to: [●] (the "**Proposed Post-Closing Assignment**" and the "**Proposed Post-Closing Assigned Contracts**").

2.      The Monitor has reviewed and approved the Proposed Post-Closing Assignment.

3.      The Monitor has sent one or more Notices of Assignment to the counterparties to the Proposed Post-Closing Assigned Contracts.

4.      No counterparty to the Proposed Post-Closing Assigned Contracts has notified it of an opposition to the Proposed Post-Closing Assignment within 10 days of the date of the Notice of Assignment.

5.      This Certificate was delivered by the Monitor at _____ **[TIME]** on _____ **[DATE]**.

> **Ernst & Young Inc., in its capacity as Monitor of the Applicants, and not in its personal capacity**
>
> Per: _____
>
>       Name:  »
>
>       Title:    »